IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| EMELIA M. SEGRETI, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | Civil Action No. 09-1511 |
| | ) | |
| BOROUGH OF WILKINSBURG, LT. | ) | |
| MICHELE KREMPATSKY, MAYOR | ) | |
| JOHN THOMPSON and MICHELE | ) | |
| KENNY, | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

Plaintiff, Emelia M. Segreti, proceeding pro se, brings this action pursuant to 42 U.S.C.

§ 1983 against Defendants, the Borough of Wilkinsburg, Lt. Michele Krempatsky, Mayor John

Thompson and Michele Kenny.  Plaintiff alleges that she has been subjected to a series of

violations of her constitutional rights, commencing with the failure of the police to investigate a

vicious attack upon her and her daughter and including the filing of false charges, malicious

prosecution and interference with her right to vote.

Currently pending for resolution is a motion to dismiss Plaintiff's First and Second

Amended Complaints, brought on behalf of the Borough and Michele Kenny ("the moving

Defendants").  For the reasons that follow, the motion will be granted.

Facts

On February 29, 2004, Plaintiff and her daughter were viciously attacked by a violent

mob of 12 to 15 individuals.  These individuals beat Plaintiff and her daughter and kicked them

repeatedly, causing them to suffer severe physical and emotional trauma and injuries.  Officers

from the Borough of Wilkinsburg came to the scene and the mob mostly scattered.  Officer Brian

Sadlowe, the officer in charge, was given statements along with names and phone numbers of several witnesses of the crime and he stopped a school bus with 8 to 10 of the assailants on it, but only took the name of the bus driver and one female.  (Am. Comp. ¶¶ 4-7.)[1]  Plaintiff picked up a copy of the police report the following morning and was "horrified" to see that only two names were cited by Officer Sadlowe, but when she asked to speak to him, she was told he was on paternity leave.  (Am. Compl. ¶ 8.)

Plaintiff received many terroristic threats in the following weeks.  At one point a threat was left on her voicemail threatening to "blow up" the bus she was on and "rape" her family.  Plaintiff alleges that she took the tape to the police, but Defendants did nothing to help, stating it was her problem.  She also tried for almost nine months to get the mayor of Wilkinsburg to meet with her, but to no avail.  (Am. Compl. ¶¶ 9-10.)

Defendant Thompson was vice president of council and also a neighbor of Plaintiff's.  One day, she spoke to him about her plight, and he suggested that she attend a council meeting to inform council of what her problem was.  On April 6, 2005, Plaintiff and her daughter told council about the situation.  All members seemed concerned and promised to investigate.  (Am. Compl. ¶¶ 11-12.)

Plaintiff alleges that, since that time, she has been continually "lied on" [sic] by individuals (mainly Defendant Krempatsky) who wanted her to just "go away."  She alleges that Krempatsky accused her of using profane language at a council meeting and that she was found guilty.  Plaintiff maintains that she never used profanity at any council meetings and that she has

---

[1]Docket No. 4.  Officer Sadlowe was named as a defendant in the original complaint, but not in the First or Second Amended Complaints.

copies of tapes which prove this.  (Am. Compl. ¶¶ 13-16.)  She alleges that Defendant Thompson is aware of and knows that Krempatsky testified falsely, but is negligent in his job as head of the police department, although he did testify for Plaintiff at trial.  (Am. Compl. ¶¶ 17-18.)

Plaintiff was cited for disorderly conduct in the Borough building on October 30, 2007. She was found guilty because of false testimony by Krempatsky and former Wilkinsburg officer Todd Roggerio.[2]  She requested a court order of the video tape in the Borough building that day which would prove the dishonesty involved in Wilkinsburg Borough.  (Am. Compl. ¶ 19.)

Plaintiff alleges that Defendant Kenny filed a false complaint against her in June of 2008, that it took a year to come to court and when it did Kenny was a "no show."  (Am. Compl. ¶¶ 20-21.)

Finally, she alleges that she was not able to vote in November 2007 because Officer Roggerio forbade her from entering the Borough building where she votes.  (Am. Compl. ¶ 23.)

Plaintiff states that, for the past four years, she has had to live in fear of dishonesty police officers in her own community who are supposed to protect her; that she, her daughter and her whole family have suffered as a result of the actions she cites; that she has severe emotional problems due to the horrific unlawful actions of these individuals; that she suffers from severe post traumatic stress, depression, anxiety and many physical injuries due to the direct actions or negligence of these individuals; and that she feels afraid to walk in her own community and feels the need to relocate to be safe from the individuals who are supposed to keep her safe.  (Am. Compl. ¶¶ 22, 24-26, 28-29.)

---

[2]Roggerio was named as a defendant in the original complaint, but not in the First or Second Amended Complaints.

In the Second Amended Complaint, Plaintiff adds the following facts: 1) on May 29, 2008, she was at an Exxon Station on Penn Avenue, discussing her experiences with some of the officers on the Wilkinsburg police department, when Defendant Kenny came up to her and started yelling at her, using profanity at her and was told to leave the gas station by the sales clerk; 2) she called Chief Coleman of the Wilkinsburg police department and left a message about how Defendant Kenny (the chief's secretary) had threatened her, but the chief never received the message because it was intercepted by Todd Roggerio; 3) Roggerio called Officer Chris Minto and directed him to go to Kenny's home to take a report on the incident at the gas station; 4) Defendant Kenny falsified a report against Plaintiff, charging her with three counts of felony harassment; 5) at the preliminary hearing, Judge Kim Hoots suggested to hold the case for 60 days and if nothing happened the case would be dismissed; 6) Plaintiff wanted the case to "go downtown" to court because she has no confidence in law enforcement in her community and she had to travel downtown to Pittsburgh every three months for a year, but she was told each time that the Commonwealth did not have enough evidence to proceed yet; 7) a trial date was finally set for June 9, 2009, but neither Defendant Kenny nor the officer who filed the report showed up for trial; 8) the Commonwealth requested a postponement but the request was denied and the case was dismissed; and 9) on October 22, 2007, Plaintiff won in arbitration when Defendant Krempatsky gave a whole new story than the one she testified to at trial.[3]  (Second Am. Compl.

---

[3]The moving Defendants have attached to their brief the docket sheet from a civil action in the Court of Common Pleas of Allegheny County, AR-07-4949, which corroborates Plaintiff's allegation that she won in arbitration against the defendant in that case, Wilkinsburg Officer James Carraway on October 22, 2007.  According to the documents in that case, Plaintiff was cited for disorderly conduct following her behavior during and after a council meeting on May 4, 2005.  She sued Carraway (not a defendant named in this case) for assaulting her.

¶¶ 1-2, 6-7, 10-11, 13-22, 25.)[4]

Procedural History

Plaintiff initiated this action by filing a motion to proceed in forma pauperis on

November 12, 2009 (Docket No. 1).  On November 16, 2009, the Court granted this motion and

the complaint was docketed on November 17, 2009 (Docket No. 2).  Plaintiff filed an Amended

Complaint on December 8, 2009 (Docket No. 4), and on February 22, 2010, she submitted a

Second Amended Complaint, which, pursuant to an order of Court dated March 4, 2010 (Docket

No. 13), was treated as a motion to file a Second Amended Complaint and granted.  The Clerk's

Office docketed the Second Amended Complaint on March 5, 2010 (Docket No. 14).

"A document filed pro se is 'to be liberally construed' and a 'pro se complaint, however

inartfully pleaded, must be held to less stringent standards that formal pleadings drafted by

lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97,

106 (1976)).  "Nevertheless, the plausibility standard of [Bell Atlantic Corp. v.] Twombly, [550

U.S. 544 (2007)] applies even to pro se litigants." Yunik v. McVey, 2009 WL 3854096, at *3

(W.D. Pa. Nov. 17, 2009).  Liberally construed, Plaintiff appears to be invoking § 1983 to

vindicate alleged violations of her rights to due process, freedom to vote and to be free from

malicious prosecution pursuant to the Fourth and Fourteenth Amendments.

On March 9, 2010, the moving Defendants filed a motion to dismiss both the Amended

Complaint and the Second Amended Complaint.  The moving Defendants contend that: 1) nearly

all of the claims are barred by the running of the applicable two-year statute of limitations, in that

the claims arise from an incident that occurred on February 29, 2004 (the alleged attack on

---

[4]Docket No. 14.

Plaintiff and her daughter) and her related complaint to Borough Council (April 6, 2005); 2)

Plaintiff cannot state a claim arising out of Defendants' alleged handling of her complaint of an

alleged crime against her or failure to prosecute certain individuals; 3) Plaintiff cannot sustain a

§ 1983 claim for the purpose of challenging a criminal conviction entered in state court because

she has not succeeded in having the conviction reversed, expunged or invalidated in state court;

and 4) Plaintiff's averments relating to the alleged incident of May 29, 2008 resulting in the

filing of criminal charges against her in or around June 2008 are legally insufficient to state a

claim of malicious prosecution because she was not subjected to a deprivation of liberty in the

form of a "seizure" for Fourth Amendment purposes.

Plaintiff responds that: 1) she has listed incidents that are beyond the statute of limitations

in order to show a pattern of harassment she has endured since seeking justice and with respect to

the October 30, 2007 citation, the preliminary hearing was held on December 5, 2007 and the

trial on April 9, 2008, well within the statute; 2) it is the responsibility of the police to investigate

crimes; 3) Plaintiff was convicted of "profanity" which is not a crime; and 4) her claim against

Defendant Kenny should not be dismissed because Kenny has harassed her.

Standard of Review

The Supreme Court has recently stated that:

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short
and plain statement of the claim showing that the pleader is entitled to relief." As
the Court held in [Bell Atlantic Corp. v.] Twombly, 550 U.S. 544, 127 S.Ct. 1955,
167 L.Ed.2d 929 [(2007)], the pleading standard Rule 8 announces does not
require "detailed factual allegations," but it demands more than an unadorned,
the-defendant- unlawfully-harmed-me accusation. Id., at 555, 127 S.Ct. 1955
(citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209
(1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation
of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955.
Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further

factual enhancement." Id., at 557, 127 S.Ct. 1955.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at 557, 127 S.Ct. 1955 (brackets omitted).

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

The Court of Appeals has stated that:

> To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record....  [In addition,] a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.

Pension Benefit Guaranty Corp. v. White Consolidated Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).  Thus, the documents attached to the moving Defendants' brief, specifically the docket sheets and pleadings from state court proceedings, may be considered without converting the motion into a motion for summary judgment, as can the pleadings from state court proceedings which are attached to Plaintiff's brief.

Statute of Limitations

The Court of Appeals has stated that:

> Technically, the Federal Rules of Civil Procedure require that affirmative defenses be pleaded in the answer. Rule 12(b) states that "[e]very defense ... shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion...." The defenses listed in Rule 12(b) do not include limitations defenses. Thus, a limitations defense must be raised in the answer, since Rule 12(b) does not permit it to be raised by motion. However, the law of this Circuit (the so-called "Third

> Circuit Rule") permits a limitations defense to be raised by a motion under Rule
> 12(b)(6), but only if "the time alleged in the statement of a claim shows that the
> cause of action has not been brought within the statute of limitations." Hanna v.
> U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975). "If the bar is
> not apparent on the face of the complaint, then it may not afford the basis for a
> dismissal of the complaint under Rule 12(b)(6)." Bethel v. Jendoco Constr. Corp.,
> 570 F.2d 1168, 1174 (3d Cir. 1978).

Robinson v. Johnson, 313 F.3d 128, 136 (3d Cir. 2002) (footnote omitted).  The moving

Defendants argue that the complaint facially shows noncompliance with the limitations period.

Because Congress did not establish a statute of limitations for civil rights claims, federal

courts "borrow" state statutes of limitations governing analogous causes of action.  Wilson v.

Garcia, 471 U.S. 262, 276 (1985) (for claims brought under 42 U.S.C. § 1983).  Under

Pennsylvania law, the statute of limitations for personal injuries is two years, 42 Pa. C.S. § 5524,

and that statute is applied to § 1983 claims.  Garvin v. City of Phila., 354 F.3d 215, 220 (3d Cir.

2003).

The moving Defendants refer to November 17, 2009, the date the Clerk's Office filed the

complaint after the Court granted Plaintiff's motion to proceed in forma pauperis, as the date that

controls for statute of limitations purposes.  However, the Court of Appeals "deem[s] a

complaint to be constructively filed as of the date that the clerk received the complaint–as long as

the plaintiff ultimately pays the filing fee or the district court grants the plaintiff's request to

proceed in forma pauperis." McDowell v. Delaware State Police, 88 F.3d 188, 191 (3d Cir.

1996) (citations omitted).  Plaintiff's motion to proceed in forma pauperis, which initiated this

case, was received by the Clerk on November 12, 2009.  Thus, only claims accruing on or after

November 12, 2007 are timely.

Unlike the selection of the limitations period, the date the cause of action accrues is

governed by federal law.  Wallace v. Kato, 549 U.S. 384, 388 (2007).  The Court noted that:

> Under those principles, it is "the standard rule that [accrual occurs] when the
> plaintiff has "a complete and present cause of action.' " Bay Area Laundry and
> Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201, 118
> S.Ct. 542, 139 L.Ed.2d 553 (1997) (quoting Rawlings v. Ray, 312 U.S. 96, 98, 61
> S.Ct. 473, 85 L.Ed. 605 (1941)), that is, when "the plaintiff can file suit and
> obtain relief," Bay Area Laundry, supra, at 201, 118 S.Ct. 542.

Id.

The Supreme Court has also held that some claims, specifically § 1983 damages claims

that necessarily implicate the constitutionality of the conviction, do not accrue until the

conviction has been overturned or invalidated.  Heck v. Humphrey, 512 U.S. 477, 489-90 (1994).

The moving Defendants note that, according to Plaintiff's allegations, her claims arise out

of incidents that occurred on February 29, 2004 (when she and her daughter were attacked), April

6, 2005 (when she complained to Borough council), October 22, 2007 (when Defendant

Krempatsky allegedly testified falsely against her in an arbitration proceeding), October 30 2007

(when she was issued a citation for disorderly conduct, on which she was found guilty),

November 6, 2007 (when former Officer Roggerio precluded her from entering the Borough

building to vote),[5] and June 2008 (when Defendant Kenny allegedly filed a false complaint

against her).  All but the last incident occurred more than two years prior to November 12, 2007,

and they are therefore barred by the statute of limitations.

Plaintiff acknowledges that the claims are time barred, but describes them as constituting

a "pattern of harassment."  However, the Court of Appeals has explained that "causes of action

that can be brought individually expire with the applicable limitations period." O'Connor v. City

---

[5]The moving Defendants request that the Court take judicial notice of the fact that, in
2007, Election Day fell on November 6 and the Court has done so.

of Newark, 440 F.3d 125, 128 (3d Cir.2006).  Each of the incidents cited could have been

brought individually and therefore, with respect to all of the incidents except for the June 2008

false complaint, the motion to dismiss should be granted based on the running of the statute of

limitations.

       Failure to Prosecute and Provide Police Protection

       The Supreme Court has held that individuals do not have a right under the Constitution to

have other individuals prosecuted.  Leeke v. Timmerman, 454 U.S. 83, 85-86 (1981); Linda R.S.

v. Richard D., 410 U.S. 614, 619 (1973).  The Court recently reiterated this long-standing

principle.  Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 767 n.13 (2005).  Thus,

accepting as true all of Plaintiff's allegations regarding the failure of the police to more

thoroughly investigate and prosecute the individuals involved in the incident on February 29,

2004, they do not state a claim recognized under the Constitution.

       Plaintiff also complains that Defendant police officers failed to "protect" her from the

violent acts of private individuals.  However, the Supreme Court has also held that individuals do

not have a constitutional right to police protection.  DeShaney v. Winnebago County Dep't of

Social Servs., 489 U.S. 189, 195 (1989).  In Town of Castle Rock, the Court held that a domestic

abuse restraining order did not grant a wife an entitlement to police protection from her husband,

but even the dissent acknowledged that "neither the Federal Constitution itself, nor any federal

statute, granted [the plaintiffs] any individual entitlement to police protection."  545 U.S. at 773

(Stevens, J., dissenting). Therefore, Plaintiff cannot state a claim based on these allegations.

       Heck v. Humphrey Limitation

       Plaintiff alleges that she was found guilty of a charge of disorderly conduct based on an

incident which occurred in the Borough building on October 30, 2007.  She contends that she

was convicted because of allegedly false testimony given by Defendant Krempatsky, and she

alleges that she has obtained video footage taken in the building on that date, which will prove

that Krempatsky was lying.  The moving Defendants argue that this claim is barred by Heck v.

Humphrey, 512 U.S. 477 (1994).

> In Heck v. Humphrey, the Supreme Court held that,
>
> in order to recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal, expunged by executive
> order, declared invalid by a state tribunal authorized to make such determination,
> or called into question by a federal court's issuance of a writ of habeas corpus, 28
> U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or
> sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. 477, 486-87 (1994) (footnote omitted).  Plaintiff has not alleged that the disorderly

conduct conviction she is challenging was reversed on appeal, expunged by executive order,

declared invalid by a state tribunal or called into question by a federal court's issuance of a writ

of habeas corpus.  Therefore, she cannot state a claim based on this conviction.

Malicious Prosecution Claim

Plaintiff alleges a malicious prosecution claim arising out of the incident with Defendant

Kenny on May 29, 2008.  This claim is timely.  However, the moving Defendants argue that it

fails for a different reason.

The Court of Appeals for the Third Circuit has stated that:

To prevail in a Section 1983 action malicious prosecution action, a plaintiff must
show:

> (1) the defendants initiated a criminal proceeding;

11

> (2) the criminal proceeding ended in the plaintiff's favor;
>
> (3) the proceeding was initiated without probable cause;
>
> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
>
> (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).  In DiBella, the plaintiffs were issued a summons but not arrested, never posted bail, were free to travel and did not have to report to Pretrial Services.  Their liberty was restricted only during the municipal court trials they attended.  The court held that "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure," but the plaintiffs "failed to state a cause of action for malicious prosecution because their attendance at trial did not qualify as a Fourth Amendment seizure."  Id. at 603.  See also Hanks v. County of Del., 518 F. Supp. 2d 642, 651 (E.D. Pa. 2007) (plaintiff was sent a citation in the mail regarding counterfeit inspection stickers and appeared at a hearing to contest it, so he did not suffer deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding);  Benard v. Washington County, 465 F. Supp. 2d 461, 469 (W.D. Pa. 2006) (plaintiff was arrested but released on her own recognizance, was required to notify the court and bail authority if she changed her address and was required to attend court proceedings, not amounting to a deprivation of liberty consistent with a Fourth Amendment seizure); Colbert v. Angstadt, 169 F. Supp. 2d 352, 356 (E.D. Pa. 2001) (receiving a summons in the mail and being required to appear in court were insufficient impositions on plaintiff's liberty for Fourth Amendment purposes).

Plaintiff states that she had to "travel downtown" three to four times in one year and that she was required to attend a trial scheduled in regard to the charges filed against her arising out of the incident with Defendant Kenny on May 29, 2008.  As the cited authorities hold, these allegations do not demonstrate that she suffered a deprivation of liberty consistent with the concept of a seizure as a consequence of a legal proceeding.  Therefore, a critical element of her malicious prosecution claim is lacking and it must be dismissed.

For these reasons, the motion to dismiss Plaintiff's First and Second Amendment Complaints, submitted on behalf of Defendants Borough of Wilkinsburg and Michele Kenny (Docket No. 15), shall be granted.

An appropriate order follows.

s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Dated: May 13, 2010

cc:    Emelia Segreti
       126 Angela Dr.
       Pittsburgh, PA 15221